IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>MISSISSIPPI STATE SENATE,<br><br>　　　　　　　Defendant. | Civil Action No. 3:24-cv-712-HTW-LGI<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, the United States of America, respectfully alleges:

1. The United States brings this action against Defendant Mississippi State Senate to enforce Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Defendant discriminated against attorney Kristie Metcalfe based on her race (Black), in violation of Title VII, by paying her a much lower salary than her white colleagues during her eight years as a staff attorney for the Senate's Legislative Services Office. Defendant consistently paid Metcalfe $40,000 to $60,000 less than its lowest-salaried white attorney (at times, paying her less than half of what it paid any of her other white colleagues) even though she and the white attorneys were doing the same jobs with the same levels of responsibility.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343(a), and 1345.

3. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to this action occurred.

## PARTIES

4. Plaintiff is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5. Defendant Mississippi State Senate ("Defendant" or "Senate") is a governmental body established by the laws of Mississippi and is located within this judicial district.

6. Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7. Kristie Metcalfe ("Metcalfe") filed a timely charge with the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 423-2019-00566) on May 31, 2019, alleging that Defendant discriminated against her in employment based on her race (Black). Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the charge, found reasonable cause to believe Defendant discriminated against Metcalfe based on her race, attempted unsuccessfully to conciliate this matter, and subsequently referred the charge to the Department of Justice.

8. All conditions precedent to this lawsuit have been performed or have occurred.

## FACTUAL ALLEGATIONS

*Metcalfe's Initial Hire in 2011 at Salary Far Lower than Incumbent White Attorneys*

9. In December 2011, Defendant hired Kristie Metcalfe as a full-time staff attorney in its Legislative Services Office ("LSO"), a non-partisan office that provides legal services for members of the Senate.

10. At all relevant times, the LSO staff attorneys performed work requiring substantially the same responsibility, under the direction and supervision of the LSO Office Director. Each LSO staff attorney drafted bills and resolutions and performed related non-partisan work regarding matters within the jurisdiction of the particular Senate committees they were assigned to support.

11. LSO attorneys are not assigned to the personal staff of any elected official.

12. LSO attorneys do not attempt to influence policy or legislation.

13. When Defendant hired Metcalfe in 2011, she was the LSO's only Black attorney. The other four full-time staff attorneys and the LSO Office Director were white.

14. For at least 34 years before Metcalfe's hire in 2011, Defendant employed only white attorneys in the LSO, and, during Metcalfe's entire eight-year LSO tenure (2011-2019), all of the other LSO attorneys were white.

15. Defendant set Metcalfe's starting salary at $55,000.

16. Metcalfe's starting salary was significantly lower than what Defendant paid all of its white incumbent attorneys at that time. Defendant paid Jeff Rosamond and Caryn Quilter $95,550 each, Larry Richardson $113,322, Bubba Neely $114,768, and Bob Davidson $121,800. Defendant's starting salary for Metcalfe was thus less than 60% of what it paid the next closest white attorneys even though the work Metcalfe was being hired to do was substantially the same as that of her white colleagues.

17. The disparity between Metcalfe's starting salary and that of her incumbent colleagues was also significantly higher than the disparity between previous LSO hires and their incumbent colleagues. For example, when Defendant hired Jeff Rosamond in 1990, it set his

starting salary at $37,000. This equaled 87% of the salary of incumbent staff attorney Bubba Neely, who earned $42,600 and had been employed by the LSO for 13 years.

18. Indeed, Metcalfe's 2011 salary was the lowest salary Defendant had given any LSO attorney since 1996 – 15 years earlier – when it paid Rosamond and Quilter each $54,500.

19. The Senate knew when it set Metcalfe's initial salary that her salary was significantly lower than the other white LSO attorneys.

*Large Salary Increases for White Incumbent Attorneys One Month After Metcalfe Hire*

20. In January 2012, just one month after Metcalfe was hired as the LSO's only Black attorney, Defendant gave the white attorneys the largest raises of their LSO careers:

 a. Rosamond and Quilter's salary was raised $18,450 from $95,550 to $114,000. Notably, the salary increase for Rosamond was about three times the $5,985 raise he later received when promoted to Office Director in 2017.

 b. Neely and Richardson received raises of $14,592 and $8,201, respectively.

 c. Davidson, who was then serving as the LSO's office director, received a raise of $14,616.

21. Metcalfe did not receive a raise in January 2012.

22. Following Defendant's raises for the incumbent attorneys, Metcalfe's $55,000 salary was less than half of what Defendant was paying each of her white colleagues.

23. The Senate's decision to give such disproportionately large raises to the white attorneys immediately after Metcalfe's hire made the disparity in pay between Metcalfe and her white colleagues even greater.

*Large Pay Disparity with White Attorneys Throughout Metcalfe's Eight-year LSO Tenure*

24. The Senate persisted in paying Metcalfe significantly less than her white colleagues throughout her time with the LSO.

25. For her entire eight-year LSO tenure, the Senate consistently paid Metcalfe about $40,000 to $60,000 less than the lowest-salaried white attorney. In many years her salary amounted to roughly half that of her white colleagues.

26. At all times during Metcalfe's employment, the Senate knew it was paying her far less than the white LSO attorneys.

*Pay Disparity with Newly Hired White Attorney in 2018*

27. In December 2018, the Senate hired a new white attorney (Ian Jones) as a full-time staff attorney in the LSO, the same position Metcalfe held, at a starting salary of $101,500.

28. The Senate set Jones's initial salary $24,335 higher than Metcalfe's salary at that time, despite Metcalfe's then seven-year tenure with the LSO.

29. When Jones was hired, he and Metcalfe each had eight years of total legal experience.

30. Jones, however, had no previous legal experience in legislative work.

31. In the LSO, Jones performed work requiring substantially the same responsibility as Metcalfe and the other LSO staff attorneys.

32. Jones was hired to replace a retiring, full-time LSO attorney (Neely).  However, Neely did not leave the LSO entirely but instead continued on a part-time, legislative session-only basis specifically to help Jones with his LSO work.

33. In December 2018, after Jones's hiring, Metcalfe met with then-Senator Terry Burton and three other Senate officials to complain about the pay disparity and ask to be paid a

salary comparable to the new attorney's salary. Burton was then Chair of the Senate Rules Committee, which was responsible for approving attorney salaries.

34. At the December 2018 meeting, Burton denied Metcalfe's request to equalize her pay with that of the new attorney.

35. Metcalfe subsequently resigned from the LSO, effective November 15, 2019.

36. Until her resignation, Metcalfe continued to be paid about half of what her white LSO attorney counterparts were paid.

## CLAIM FOR RELIEF

### Title VII, 42 U.S.C. §§ 2000e-2(a)
### Discrimination in Pay Based on Race (Black)

37. The United States repeats and incorporates by reference the factual allegations set forth in paragraphs 9-36 above.

38. Defendant engaged in unlawful pay discrimination in violation of Title VII when it paid Metcalfe, a Black attorney, a lower salary than any white staff attorney for work requiring substantially the same responsibility, because of Metcalfe's race.

39. As a result of Defendant's unlawful pay discrimination, Metcalfe incurred damages including, but not limited to, lost income.

40. As a result of Defendant's unlawful pay discrimination, Metcalfe suffered emotional harm including, but not limited to, pain and suffering, emotional distress, anxiety, and loss of enjoyment of life.

41. As a result of Defendant's unlawful pay discrimination, Metcalfe incurred damages related to out-of-pocket expenses including, but not limited to, health care expenses.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Court grant the following relief:

A.      Order Defendant to implement policies, practices, and procedures to prevent race discrimination in the workplace against employees protected under Title VII;

B.      Provide make-whole relief to Metcalfe, including backpay to compensate her for the loss she has suffered as a result of Defendant's discriminatory conduct alleged in this Complaint;

C.      Award Metcalfe any prejudgment interest on the amount of lost wages and benefits determined to be due;

D.      Award damages to Metcalfe to fully compensate her for pain and suffering caused by Defendant's discriminatory conduct alleged in this Complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

E.      Award such additional relief as justice may require, together with the United States' costs and disbursements in this matter.

## JURY DEMAND

The United States demands a trial by jury of all issues so triable under Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Date: November 8, 2024

Respectfully submitted,

    KRISTEN CLARKE
    Assistant Attorney General
    Civil Rights Division

BY:   /s/ Louis Whitsett
    KAREN D. WOODARD, Chief
    (MD Bar (no number issued))
    VALERIE MEYER, Deputy Chief
    (AZ Bar No. 023737)
    LOUIS WHITSETT, Senior Trial Attorney
    (DC Bar No. 257626)
    U.S. Department of Justice

Civil Rights Division
Employment Litigation Section
4 Constitution Square, 9th Floor
Washington, D.C.  20002
Telephone: (202) 305-5828
Facsimile: (202) 514-1005
Email:  Louis.Whitsett@usdoj.gov

TODD GEE
U.S. Attorney
Southern District of Mississippi

BY:  /s/ James E. Graves, III
JAMES E. GRAVES, III
(MS Bar No. 102252)
Assistant United States Attorney
Southern District of Mississippi
501 Court Street, Suite 4.430
Jackson, Mississippi 39201
Telephone: (601) 965-4480
Facsimile: (601) 965-4032
Email: James.Graves@usdoj.gov

Attorneys for Plaintiff United States of America